IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AVIS RENT A CAR SYSTEM, LLC,
et al.,

        Plaintiffs,

    v.

CITY OF DAYTON, OHIO

        Defendant.

:

:

:

:

Case No. 3:12-cv-399

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO
QUASH SUBPOENA OF ATTORNEY SUZANNE C. BECK (DOC. #23)

---

Pending before the Court is the Motion to Quash Subpoena of Attorney Suzanne P. Beck (Doc. #23), filed by Defendant the City of Dayton, Ohio ("City," "Defendant") on February 13, 2013.  Ms. Beck is an attorney at the City's law department, and Plaintiffs Avis Rent A Car System, LLC and Budget Rent A Car System, LLC ("Avis Plaintiffs") allege that the attorney-client privilege protecting advice she provided to personnel of the James M. Cox Dayton International Airport ("Airport") has been waived.  Accordingly, the Avis Plaintiffs served Ms. Beck on February 5, 2013, with a subpoena commanding her to appear for a deposition. Doc. #23-1.  For the reasons set forth below, the Court will SUSTAIN the City's motion.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

Several rental car companies, including the Avis Plaintiffs and Enterprise RAC Company of Cincinnati, LLC dba Enterprise Rent-A-Car and Vanguard Car Rental USA, LLC dba National and Alamo ("Enterprise Plaintiffs"), lease space in the parking garage of the Airport from the City. The Avis Plaintiffs and the Enterprise Plaintiffs separately filed suit against the City, alleging that the implementation of a new permit process governing the garage's allocation of spaces to the rental car businesses would breach the parties' existing lease agreements. The Avis Plaintiffs filed a Complaint (Doc. #1) and a Motion for a Temporary Restraining Order (Doc. #3), in which they alleged breach of contract, seeking preliminary and permanent injunctive relief and a declaratory judgment.[1]

During a December 10, 2012, conference call with the Court, the parties indicated that they had set a mutually acceptable discovery plan and briefing schedule in anticipation of a preliminary injunction hearing originally scheduled for February 21, 2013. Doc. #14. Since then, the Plaintiffs' request for preliminary injunctive relief has been consolidated with a trial on the merits, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Doc. #33. The trial is scheduled to begin on July 30, 2013. Doc. #34. A number of discovery-related motions and issues are pending before the Court, including the City's Motion to Quash

---

[1] The Enterprise Plaintiffs also filed, in Case No. 3:12-cv-405, a similar Complaint (Doc. #1) and a Motion for a Temporary Restraining Order (Doc. #5).

Subpoena of Attorney Suzanne P. Beck (Doc. #23), filed by the City on February 13, 2013.

The Avis Plaintiffs filed a Memorandum in Opposition to Defendant's Motion to Quash (Doc. #26) on March 1, 2013. The same day, the Enterprise Plaintiffs, who also wish to depose Ms. Beck, also filed a Memorandum in Opposition to the City's Motion. Case No. 3:12-cv-405 at Doc. #27. The City filed a Reply Memorandum on March 11, 2013. Doc. #30.

In its Motion to Quash, the City argues that because Ms. Beck is the City's attorney and trial counsel for the City, a subpoena issued to her is subject to the test described in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), that is applied when a party seeks the deposition of opposing counsel. Doc. #23 at 5-12. Plaintiffs' subpoena fails the *Shelton* test, the City argues, because the information sought is privileged, not relevant to the case before the Court, and obtainable by other methods. *Id.* The City also argues that the subpoena should be quashed because it did not allow a reasonable time to comply, as required by Federal Civil Rule 45(c)(3)(A)(i). *Id.* at 12.

The Avis Plaintiffs respond by arguing that Director Slaybaugh waived the City's attorney-client privilege during his deposition, claiming that the information sought from Ms. Beck is both uniquely obtainable from her and entirely relevant to the present controversy. Doc. #26 at 3-7. Plaintiffs also claim that the argument that they have not given the City a reasonable time to comply is a "red herring," because all the parties knew that the subpoena would be subject to a motion to

quash, with the scheduling of any deposition therefore dependent upon the Court's ruling. *Id.* at 7.

The City's Reply asserts that Director Slaybaugh's testimony, if examined fully and in context, was neither voluntary nor substantive enough to constitute waiver of the attorney-client privilege. Doc. #30 at 4-13. In addition, the City argues that it holds the privilege, not Director Slaybaugh, and that none of the Plaintiffs' arguments satisfy the *Shelton* test. *Id.* at 13-18.

## II.  ANALYSIS

Rule 45(c)(3) of the Federal Rules of Civil Procedure allows a court to quash or modify a subpoena in order to protect a person from a party's potential abuse of the subpoena power. If a subpoena "requires disclosure of privileged or other protected matter, [and] no exception or waiver applies," it must be quashed by the district court. Fed. R. Civ. P. 45(c)(3)(A)(iii). A motion to quash bears a heavier burden than a motion to modify, and the burden of persuasion is generally borne by the movant. *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987). However, because of its extraordinary nature, a subpoena noticing opposing counsel for deposition must be justified by the party serving it. "Taking the deposition of opposing counsel is not barred by the Federal Rules of Civil Procedure, but because of its obvious hazards to the ability of an attorney to properly represent his client such discovery is disfavored." *Ohio Ass'n of*

4

*Elementary Sch. Adm'rs v. Educ. Impact, Inc.*, No. 2:11-cv-68, 2012 WL 3731487, at *1 (S.D. Ohio Aug. 28, 2012).

The Sixth Circuit has adopted the test developed by the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), to determine whether a party has justified its demand to depose opposing counsel. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir 2002). Under the *Shelton* test, the movant must show the following: "(1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327). Each of the three *Shelton* "factors are then balanced so that the Court may make a determination whether the need for the discovery, and the general proposition that all witnesses in possession of relevant evidence are subject to being deposed, outweigh the intrusion which will unquestionably occur when an opposing party's attorney is deposed." *Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.*, No. 2:05-cv-0889, 2007 WL 543929, at *4 (S.D. Ohio Feb. 16, 2007).

Before analyzing the *Shelton* factors, it is first necessary to specify the information sought by Plaintiffs. The subpoena states that Ms. Beck's oral deposition will encompass the following:

    I. Ms. Beck's research, analysis, interpretation, and communications with others regarding the Ready/Return Agreements, the

>    Concession Agreements, the May 2, 2008 Memorandum of Understanding, and the Permit Process.
>
> 2. Advice and opinions that Ms. Beck gave to Director Slaybaugh or any of his employees or consultants regarding the Ready/Return Agreements, the Concession Agreements, the May 2, 2008 Memorandum of Understanding, or the Permit Process.

Doc. #23-1 at 4. In addition, Plaintiffs seek documents "constituting, reflecting, or relating to" all of the above, as well as Ms. Beck's notes. *Id.* at 5. The subject matter of the subpoena clearly encompasses material protected by the attorney-client privilege and the work product doctrine.

### A. No Other Means Exist to Obtain the Documents and Information Sought from Ms. Beck.

Under the first *Shelton* inquiry, there must be no other means, other than deposing Ms. Beck, to obtain the information sought by the Plaintiffs. At first blush, this would appear to be the case. All of the information requested is described entirely in terms of work, thought processes, statements, and documents created only by Ms. Beck, and therefore appears obtainable only from her.

The City argues that it "has already informed Plaintiffs of its position regarding the expiration of the Concession Agreements," a position that the parties appear to agree is attributable to Ms. Beck. Doc. #23 at 11; Doc. #26 at 6. The City reasons, therefore, that the information sought by the Plaintiffs may be obtained by reading its Memorandum in Opposition to All Plaintiffs' Motions for a Temporary Restraining Order, or by deposing Lynn Leibowitz, the consultant who

6

also counseled the City on its agreements with the Plaintiffs. Doc. #23 at 11-12. This argument is logical in the sense that the City's legal position on the controversies, which are the fruit of Ms. Beck's efforts, are presented within the Memorandum and other documents filed by the City. However, the Plaintiffs go farther; they appear poised to question Ms. Beck on her consultations with City employees and her reasoning process, and to examine every bit of work product she has created. Thus, the scope of information and documents Plaintiffs seek is wider than what is currently available. Ms. Leibowitz's deposition, coupled with the City's legal memoranda, could not, therefore, satisfy Plaintiffs' demand. Given that deposing Ms. Beck and accessing her work product would be the only means of obtaining the information sought, the first *Shelton* factor has been met. The Court notes that this first factor is merely concerned with the obtainability of the information. Whether or not whether it would be appropriate for Plaintiffs to obtain the desired information is the subject matter of *Shelton*'s second inquiry.

**B.     The Information Sought is Relevant.**

The second *Shelton* inquiry asks whether the information is relevant and nonprivileged, and the Court will first consider its relevancy. *Nationwide*, 278 F.3d at 628. Federal Rule of Civil Procedure 26(b)(1) describes the scope of discoverable matter, which includes "any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity

7

and location of persons who know of any discoverable matter." The court may even expand the scope to encompass "any matter relevant to the subject matter involved in the action," upon a showing of good cause. Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." It is evident from the plain language of Federal Rule 26(b)(1) that "the Federal Rules of Civil Procedure authorize extremely broad discovery." *Ward v. American Pizza Co.*, 279 F.R.D. 451,457 (S.D. Ohio 2012) (citing *United States v. Leggett & Platt, Inc.*, 542 F.2d 655 (6th Cir. 1976)).

Plaintiffs assert that "[t]he information sought is plainly relevant," but provide no real analysis of the issue. Doc. #26 at 7. On the other hand, the City argues that "[t]he information sought by Plaintiffs does not come close to being relevant," because any advice that Ms. Beck provided to Director Slaybaugh "has no bearing upon the issues in this case [given that] this Court will determine as a matter of law when the Agreements expire." Doc. #23 at 9-10. It is true that much of the controversy in this case revolves around the issue of when the parties' agreements expire, which is a matter of contract interpretation. Furthermore, in Ohio, "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Latina v. Woodpath Dev. Co.*, 567 N.E.2d 262, 264 (Ohio 1991) (quoting *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146, 148 (Ohio 1978) (superseded by statute on other grounds)).

8

However, issues of fact may be relevant to contract interpretation, such as the consideration of "extrinsic evidence to ascertain the parties' intent" when contract terms are ambiguous. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256 (Ohio 2003) (citing *Shifrin v. Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992)). The controversy before the Court concerns the status of several different agreements of the parties, including the Concession Agreements, the Ready/Return Agreements, and the Memorandum of Understanding. Evidence from outside the four corners of those documents may be necessary to determine whether the parties intended one to modify or succeed the parties' original agreement. *See Reiter Dairy, Inc. v. Ohio Dept. of Health*, 10th Dist. No. 01AP-944, 2002-Ohio-2402, ¶ 15 (stating that "[w]hether the parties agreed to change or abandon the contract is a question of fact") (citing *Mooney v. Green*, 446 N.E.2d 1135, 1139 (Ohio 1982)). The City itself argues that the Memorandum of Understanding supersedes and "nullifies" the Concession Agreements and the Ready/Return Agreements. Doc. #18 at 16-19. The parties themselves are engaging in discovery, so there is obviously relevant evidence surrounding the agreements that they believe worth uncovering. However, the information and documents sought from Ms. Beck postdate the formation of the disputed agreements, indicating that their ability to illuminate the parties' intent and the circumstances of their formation may be rather attenuated.

Nevertheless, the very liberal scope of discovery described in Federal Rule 26(b)(1) encompasses the information and documents sought from Miss Beck,

9

which are undoubtedly relevant to the Plaintiff's claims. A portion of Plaintiffs' claims involve the City's alleged breach and repudiation of the agreements. The allegations of breach concern the City's implementation of the permit process, which, as Director Slaybaugh testified, he and his staff developed some time before and during the time period that Ms. Beck was consulted. Case No. 3:12-cv-405, Doc. #27 at 8. The Enterprise Plaintiffs identify the relevancy of Ms. Beck's input to its claims of breach and repudiation when they state that her "deposition is necessary to uncover whether the City's litigation position represents the City's true intent with regard to the Ready/Return Agreements and whether the City has acted in bad faith." Doc. #27 at 14, Case No. 3:12-cv-405. The parties' complaints allege that the City breached its agreements in bad faith. *See* Complaint of Avis Plaintiffs, Doc. #1 at 10, ¶ 46 (alleging that "[t]he City's repudiation of its obligations and its blatant refusal to negotiate constitute a breach of contract and the duty of good faith and fair dealing implied in all contracts") and Complaint of Enterprise Plaintiffs, Case No. 3:12-cv-405, Doc. #1 at 23, ¶¶ 104 & 105 (alleging that Defendant breached the Memorandum of Understanding's "provision that requires the City to negotiate a successor agreement in good faith" and its "implied duty of good faith and fair dealing with respect to the MOU and the Ready/Return Agreement"). Furthermore, Ms. Beck's "research, analysis, interpretation, and communications" and her advice to Director Slaybaugh may have formed the raw material for the City's defenses to the Plaintiff's claims, and are therefore relevant. Doc. #23-1 at 4. Under the very liberal standard of being

10

"relevant to any party's claim or defense," the Court concludes that the information and documents sought from Miss Beck are undoubtedly relevant. Fed. R. Civ. P. 26(b)(1).

### C. The Information Sought is Privileged.

The Court now turns to the other half of the second *Shelton* inquiry, which concerns the crucial question of whether the information and documents sought from Ms. Beck remain privileged, or if, as Plaintiffs assert, privilege was waived. Federal common law applies to a claim of privilege, except that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Because the Court's jurisdiction is based on the diversity of citizenship of the parties, Ohio law provides the rule of decision for the Plaintiffs' breach of contract claim and the City's defenses. *See* 28 U.S.C. § 1332 (providing diversity jurisdiction based on the citizenship of the parties and the amount in controversy) and 28 U.S.C. § 1652 (requiring application of state law in civil actions in federal court in the absence of applicable federal law). Ohio law, therefore, also applies to the claims of privilege asserted by the City.

Under Ohio law, an attorney may not testify "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client" unless the client expressly consents. Ohio Rev. Code § 2317.02(A)(1). Waiver provides the exception to the testimonial privilege rule: "However, if the

11

client voluntarily reveals the substance of attorney-client communications in a nonprivileged context . . . the attorney may be compelled to testify on the same subject." *Id.* The statute "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *State v. McDermott*, 651 N.E.2d 985, 988 (Ohio 1995). Ohio's statutory "testimonial privilege applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process." *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 7 n.1.

Plaintiffs contend that Director Slaybaugh voluntarily revealed the substance of his communications with Ms. Beck during his deposition. Doc. #26 at 2. Plaintiffs point out that Director Slaybaugh and his staff originally believed that the lease agreement with Plaintiffs had a twenty year term. However, after asking Ms. Beck "to look for ways for us to - - to be able to get out of the agreement," Director Slaybaugh's opinion changed, and he believed that the lease agreement was for a shorter period. *Id.*; Doc. 26-1 at 11. The Director relied upon advice from the City's attorneys, including Ms. Beck, before deciding to go ahead with the "permit process." Doc. 26-1 at 11-12. Plaintiffs believe that these statements amount to a waiver of the City's attorney-client privilege.

The City criticizes Plaintiffs' characterization of Director Slaybaugh's testimony, which the City argues was not voluntary and did not reveal the substance of the communications with Ms. Beck. The City points out that during the deposition of Director Slaybaugh, its attorneys repeatedly objected to "the line

12

of questioning where Plaintiffs intentionally tried to elicit privileged information," and instructed him not to answer. Doc. #30 at 2-3. Moreover, the City argues that the statements that Plaintiffs drew forth from Director Slaybaugh merely revealed the fact that the communication occurred, but did not divulge any degree of substance that would amount to a waiver. *Id.* at 10-12.

To determine whether statements made during a cross-examination are sufficiently voluntary to constitute waiver of the testimonial privilege, courts have relied upon the analysis of the Ohio Supreme Court in *Harpman v. Devine*, 10 N.E.2d 776 (Ohio 1937).[2] *Harpman* held that mere responses to questions on cross-examination cannot constitute a waiver of privilege, because "[s]uch testimony is not voluntary within the purview of the statute." *Harpman*, 10 N.E.2d at 776. *Harpman* was a negligence action in which the plaintiff was injured by a glass window broken by a suspended fire hose. *Id.* at 777. On cross-examination, the defendant's counsel asked the plaintiff what ailments his physician had treated him for before the accident. *Id.* The plaintiff responded that he did not know, he did not think the physician himself knew, and for that reason

---

[2] Although *Harpman* specifically addressed the physician-patient privilege as set forth in a previous version of the statute, Ohio courts apply its analysis to the attorney-client privilege as presently defined in the Ohio Revised Code. *See Tandon v. Tandon*, No. 99 JE 36, 1999 WL 1279162 at *3 (Ohio Ct. App. Dec. 27, 1999) (noting similarity between the "structure and purpose" of the privilege statutes and citing the "number of courts [that] have held that the principles espoused in *Harpman* continue to be applicable in regards to both the physician-patient and the attorney-client privilege as these privileges currently exist under R.C. 2317.02").

13

he had stopped seeing the physician. *Id.* The Ohio Supreme Court could recognize no voluntary disclosure in the plaintiff's responses:

> The only testimony the plaintiff gave respecting [his physician] is to be found in his answers on cross-examination in response to questions by counsel for defendant. Is such testimony voluntary within the meaning of the stat[ute]? Is it something brought forth 'voluntarily' by the plaintiff? He was obliged to answer the questions whether he desired to or not. Whatever was developed respecting [plaintiff's physician] in cross-examination was brought out by the defendant. In that cross-examination of the plaintiff, it was counsel for defendant who directed the course of the inquiry. It was counsel for defendant who propounded the subjects of the questions which plaintiff was obliged to answer. The plaintiff had no choice about the matter. He was obliged to answer or be in contempt of court. Obviously, in such a situation the plaintiff did not 'voluntarily' testify respecting any 'communications' or 'advice' from [his physician]. There was no waiver in the testimony on cross-examination.

*Id.* at 778; *see also Foley v. Poschke*, 32 N.E.2d 858 (Ohio 1940) (following *Harpman* and holding that "[a]nswers made by a client on cross-examination are not 'voluntarily' made" for purposes of the statutory waiver).

In spite of *Harpman*'s forceful language, Ohio courts have resisted applying a rigid rule under which a party could never voluntarily waive privilege during cross-examination. For example, in *Tandon v. Tandon*, No. 99 JE 36, 1999 WL 1279162 (Ohio Ct. App. Dec. 27, 1999), a divorce action, a defendant was cross-examined and asked about an incomplete interrogatory. The defendant responded that his attorney "had apparently misinterpreted" his answers. *Id.* at *1. After being asked why he had failed to attend a court-ordered appointment with a psychologist and then filed a lawsuit against the psychologist, the defendant responded that he acted based on the advice provided by his attorney. *Id.* at *2.

14

The Court of Appeals reversed the trial court's determination that those statements voluntarily waived attorney-client privilege "primarily due to the fact" that they occurred during cross-examination, but also because of they were "of little or no consequence to the proceedings." *Id.* at *3. The court followed *Harpman*, but cautioned that it recognized no "blanket rule that a client may make any statement regarding counsel during cross-examination without the fear of waiving the privilege." *Id.* at *4. The court further noted that under "the proper circumstances, we will not hesitate to find a waiver of the attorney-client privilege despite the fact that the statements made by a client were on cross-examination." *Id.*

Such circumstances arose in *Meyers, Roman, Friedberg & Lewis, L.P.A. v. Malm*, 916 N.E.2d 832, 2009-Ohio-2577 (Ohio Ct. App. 2009). In *Malm*, the defendant was confronted with a discrepancy between his testimony and previous deposition statements. 916 N.E.2d at 836-37. In response, the defendant contended that his previous attorneys had prepared and asked him to sign a false declaration. *Id.* at 837. The Eighth District Court of Appeals upheld the trial court's determination that the defendant's statements, which were made without objection, operated as complete waivers of the attorney-client privilege. *Id.* at 837-38. The Court of Appeals distinguished the situation from both *Harpman* and *Tandon*, noting that the defendant "affirmatively asserted, without being asked, that he acted on the advice of his [] attorneys" when he reviewed and signed the

15

false statements. *Id.* Furthermore, the assertion "was not forced out of him by [opposing] counsel on cross-examination." *Id.* at 838.

Thus, under *Harpman, Foley,* and *Tandon*, there is at least a presumption that statements made during cross-examination are not voluntarily. Under *Malm*, a party claiming that the attorney-client privilege has been waived may overcome that presumption by pointing to the cross-examined party's unprompted disclosure of privileged communications, affirmatively offered, to which the examined party or their counsel did not object. Such indicia of voluntariness, as described by the Ohio courts, are largely absent from the Court's reading of Director Slaybaugh's testimony.

First, Director Slaybaugh was under cross-examination at a deposition, which, according to the City, lasted approximately 13 hours over two days. Doc. #30 at 6. Under *Harpman*, the cross-examination of Director Slaybaugh during the deposition was presumptively involuntary. The Enterprise Plaintiffs omit any mention of the fact that Director Slaybaugh was under cross-examination when they assert, citing *Malm* and other cases, that "Ohio courts recognize that testimony given at a deposition is normally voluntary; thus the attorney-client privilege is waived when a person testifies at a deposition regarding the substance of communications with an attorney." Case No. 3:12-cv-405, Doc. #27 at 6. Such reasoning simply equates the fact that the Director appeared for a deposition with a demonstration of "voluntariness," while ignoring the involuntary nature of cross-examination recognized by *Harpman* and the Ohio courts that have applied

16

that case. The deponent's statements and the questions asked during cross-examination are what must be analyzed for indications of voluntary waiver. The Enterprise Plaintiffs also point out that the Director appeared at his deposition without having been served a subpoena. However, the absence of a subpoena does not leach the proceedings of their adversarial nature. *Id.* at 7.

Plaintiffs' argument appears more focused when they point to Director Slaybaugh's statement that he and his staff "asked our legal counsel, the City, Suzanne Beck, to look for ways for us to - - to be able to get out of the agreement." Doc. #26-1 at 10-11. However, Director Slaybaugh's statement only resembles a voluntary offering when isolated from the line of questioning that produced it, which, to illustrate, occurred as follows:

> Q. So you would agree with me based upon that answer that you and your staff had always believed while you spoke internally that the ready/return agreement had a term of twenty years, correct?
>
> A. Yes.
>
> Q. And then that ultimately changed?
>
> A. Yes.
>
> Q. When did that change?
>
> A. When we asked our legal counsel, the City, Suzanne Beck, to look for ways for us to -- to be able to get out of that agreement.
>
> Q. And if Miss Beck -- strike that.
>
> When did you ask Miss Beck to review the agreement to see if you can get out of the agreement?
>
> MR. BAZELAK: Objection. Don't answer that.

17

| | |
|---|---|
| MR. KESSLER: | Are you claiming that's attorney-client privilege when he asked her? |
| MR. BAZELAK: | I'm telling him not to discuss anything that he discussed with counsel. |
| MR. KESSLER: | I didn't ask him to discuss anything with counsel. Are you going to instruct him not to answer? |
| MR. BAZELAK: | I'm instructing -- ask the question again. |
| MR. KESSLER: | Read it back, please. |
| (Record read.) | |
| MR. BAZELAK: | He can answer that question. |
| THE WITNESS: | Probably sometime -- sometime in the time frame after we began to formulate a plan for the permit process. ... |

Case No. 3:12-cv-405, Doc. #27-1 at 6-8.

None of Director Slaybaugh's statements were unprompted, volunteered, or offered without objection. The excerpt illustrates an obvious struggle between adversaries to control the scope of the Director's testimony. The statements that he made bear little resemblance to the defendant's statements in *Malm*, which the trial judge described as "not even in response to a question from plaintiff's counsel; [the assertion] is something he has volunteered, and he has done it twice now in two different contexts." *Malm*, 916 N.E.2d at 837, 2009-Ohio-2577 ¶ 45.

The Enterprise Plaintiffs cite to *Amer Cunningham Co., L.P.A. v. Cardiothoracic Vascular Surgery of Akron*, 9th Dist. No. 20899, 2002-Ohio-3986, claiming that the "case is strikingly similar" to the present situation. Case No. 3:12-cv-405, Doc. #27 at 6. In *Amer Cunningham*, Ohio's Ninth District Court of

Appeals upheld a motion to quash filed by the former attorney of a law firm that sued a medical practice for unpaid legal fees. 2002-Ohio-3986 ¶¶ 1-3. Because a doctor of the practice had freely "discussed the conversations he had with [his attorney] about the bill in question" during a deposition, the court determined that the doctor had waived the attorney-client privilege. *Id.* ¶ 18. In spite of Plaintiffs' assertion, the Court finds *Amer Cunningham* distinguishable for several reasons. First, in contrast to the tenor of the transcript of Director Slaybaugh's deposition, the partial record of testimony reviewed in *Amer Cunningham* was "void of any objections or refusals to answer questions" about the privileged communications. *Id.* Second, while the *Amer Cunningham* court stated that "a court must consider the facts of the case before it, specifically the questions and answers from the deposition, and then decide if the testimony concerning the relevant information was voluntary," the partial record before it prevented it from doing so. *Id.* ¶ 17. That court did not quote or analyze any specific statement made by the deponent.

Here, after considering the specific questions and answers from Director Slaybaugh's deposition, the Court concludes that they lack the indicia of voluntariness that Ohio courts look for in order to determine whether a cross-examined deponent has waived attorney-client privilege. Because Director Slaybaugh did not "voluntarily reveal the substance of attorney-client communications" necessary to waive the attorney-client privilege, Plaintiffs' subpoena fails the second *Shelton* inquiry. Ohio Rev. Code § 2317.02(A)(1). Consequently, the Court concludes that Plaintiffs may not, under *Shelton*,

19

subpoena the testimony or work product of their adversary's opposing counsel, Ms. Suzanne Beck.

## III.   CONCLUSION

Because Director Slaybaugh's statements did not waive the City's attorney-client privilege, the Court need not proceed to the final *Shelton* inquiry and examine whether "the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir 2002) (quoting *Shelton*, 805 F.2d at 1327). Moreover, the Court's conclusion that the City's attorney-client privilege remains intact invokes the requirement of Federal Civil Rule 45(c)(3)(A)(iii) to quash a subpoena of privileged matter. No waiver applies to the subpoena that Plaintiffs served on Ms. Beck for privileged and protected information; therefore, the Court <u>must</u> quash the subpoena. Fed. R. Civ. P. 45(c)(3)(A)(iii). Finally, the Court's conclusion moots the City's alternative argument for quashing a subpoena, based upon Plaintiffs's alleged failure to afford Defendant "a reasonable time to comply" with the subpoena, as required by Federal Civil Rule 45(c)(3)(A)(i). Doc. #23 at 12.

For the reasons set forth above, the Court SUSTAINS Defendant's Motion to Quash Subpoena of Attorney Suzanne P. Beck (Doc. #23).

Date: July 15, 2013

WALTER H. RICE
UNITED STATES DISTRICT JUDGE